Megan Overmann Goetz (Wyo. Bar # 6-3634)
Crystal D. Stewart (Wyo. Bar # 7-6057)
Pence and MacMillan LLC
501 Garfield
P.O. Box 1285
Laramie, WY 82073
Telephone: 307-745-3626
movermann@penceandmac.com
cstewart@penceandmac.com
*Attorneys for Plaintiff*

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2021 MAY 20  PM 2:53

MARGARET BOTKINS, CLERK
CHEYENNE

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TUNGSTEN PARTS WYOMING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL NO. 21CV99-J |
| ) | |
| DENNIS OMANOFF, GEORGE PAZOS, ) | |
| GLOBAL TUNGSTEN AND POWDERS CORP., ) | |
| And DOES 1-10, unknown. ) | |
| ) | |
| Defendants. ) | |

## VERIFIED COMPLAINT

COMES NOW, Plaintiff, Tungsten Parts Wyoming, Inc. by and through its attorneys,

Pence and MacMillan LLC, and respectfully submits its Complaint against Defendants. In support

of its claims, Plaintiff alleges and states as follows:

## JURISDICTION AND VENUE

1.  Plaintiff Tungsten Parts Wyoming, Inc. (as used herein "Plaintiff," "Plaintiff TPW Wyoming," and "TPW Wyoming") is a Delaware Corporation registered to do business in the State of Wyoming.  Plaintiff operates and maintains its principal place of business at 1665 Venture Drive, Laramie, Wyoming 82070.

2.  Upon information and belief, Defendant Dennis Omanoff ("Defendant Omanoff") is an individual whose residence is in Brevard County, Florida.

3.  Upon information and belief, Defendant George Pazos ("Defendant Pazos") is an individual whose residence is in San Diego County, California.

4.  Upon information and belief, Defendant Global Tungsten and Powders Corporation ("Defendant Global Tungsten") is a Delaware Corporation that is registered to do business in the State of Pennsylvania. Defendant Global Tungsten also operates its principal place of business in the State of Pennsylvania.

5.  Upon information and belief, Defendants Does 1-10, are individuals or entities whose identities are not yet ascertained but are believed to be legally responsible in some manner for the events and happenings referred to herein, and who at all times relevant herein, resided or had a principal place of business outside of the State of Wyoming. The identities of liable parties will be added as they are discovered.

6.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000.00 and this civil action is between citizens of different states.

7.   This Court also has jurisdiction over this action pursuant to 15 U.S.C. §§ 15, 22 and 26 and the related antitrust laws of the United States.

8.   Venue is proper in the District Court of Wyoming because Plaintiff TPW Wyoming is authorized to do business in Wyoming, does business in Wyoming, and the actions giving rise to the claims herein have taken place in Wyoming.

## BACKGROUND FACTS

9.   Plaintiff restates each and every allegation contained in Paragraphs 1 through 8.

10.  TPW Wyoming is a production and manufacturing company for tungsten metal products, and as specifically applicable herein to the antitrust allegations, for specialized tungsten fragments, manufactured to a high tolerance and detailed specifications, that are designed for use by the United States Military as products in warheads and similar destructive devices (the "Market").

11.  Defendant Global Tungsten is a direct competitor of TPW Wyoming in the Market.

12.  Defendant Omanoff was formerly employed by TPW Wyoming from approximately April 15, 2019 to July 15, 2019.

13.  Defendant Pazos was formerly employed by TPW Wyoming from approximately early 2018 to July 31, 2019.

14.  Since 2018, Defendant Global Tungsten, independently and by and through its agents and associates, has orchestrated a systematic campaign to disparage and destroy the reputation of TPW Wyoming generally, and deprive TPW Wyoming of its business in the Market.  This was done initially through a campaign of disparagement against

Tungsten Heavy Powder, Inc., d/b/a Tungsten Heavy Powder and Parts ("THP California"), that had acted as a sales agent for TPW Wyoming, and that had and has a business of resale of tungsten metal and parts.  Defendant Global Tungsten's efforts are now directed against TPW Wyoming.

15.    Since 2019, Defendant Omanoff and Defendant Pazos have orchestrated a systematic campaign to disparage and destroy the reputation of TPW Wyoming and deprive TPW Wyoming of its business in the Market.

16.    Defendant Global Tungsten, independently and by and through its agents and associates, and Defendants Omanoff, and Pazos, have engaged in and continue to engage in programmatic efforts to intentionally interfere with the business relationships of TPW Wyoming; the efforts of which are wrong, unlawful, and have caused and continue to cause TPW Wyoming serious and irreparable financial and business-related harm.

17.    Defendant Omanoff and Defendant Pazos were employed as "at-will" employees of Plaintiff. Specifically, these two Defendants agreed to, and executed, an At-Will Employment Offer and Agreement ("At-Will Agreement"). The At-Will Agreement(s) for each Defendant are attached hereto and incorporated herein fully by reference as **Exhibits 1 and 2**.

18.    In executing the At-Will Agreements, Defendants Omanoff and Pazos explicitly acknowledged their understanding and acceptance of the right for their employer to terminate their employment at any time, for any reason, with or without cause or notice.

19.    Prior to commencement of employment, and as a condition of employment with Plaintiff, Defendants Omanoff and Pazos further agreed to and executed a

Confidentiality and Non-Disclosure Agreement ("Confidentiality Agreement"), wherein Defendants Omanoff and Pazos each agreed to preserve and protect TPW Wyoming proprietary information and intellectual property rights. Said Confidentiality Agreement(s) for Defendants Omanoff and Pazos are attached hereto and incorporated herein fully by reference as **Exhibits 3-4**.

20.    In executing the Confidentiality Agreement(s), Defendants Omanoff and Pazos each explicitly agreed to not inappropriately access, use for personal reasons, or disclose any employer proprietary information, including but not limited to inventions, marketing plans, product plans, business strategies, financial information, forecasts, personnel information, and customer lists and data without prior written consent, and further agreed that upon termination of employment, all documents and materials of any nature pertaining to work would be promptly returned.

21.    In executing the Confidentiality Agreement(s), Defendants Omanoff and Pazos each explicitly agreed information and intellectual property that resulted from work performed for Plaintiff, or that related to business or current anticipated research and development activities of Plaintiff were the sole and exclusive property of Plaintiff.

22.    In or around June to September of 2019, TPW Wyoming made key business decisions to change the management and business strategy of TPW Wyoming, which included adjustment of internal operational structures, changes in key management personnel, as well as modifying customer-based government-based business product inspection, regulatory compliance and customer review structures. It also commenced the

adjustment and change of its business relationship with THP California, that in part also resulted in a change in director(s), officer(s) and shareholder(s).

23. Certain of these changes were the result of Defendants Omanoff and Pazos' failures as TPW Wyoming executives and business leaders.

24. TPW Wyoming has learned, on information and belief, that certain of Defendant Omanoff's actions related to an intent by Defendant Omanoff to work with Defendant Pazos and with other associated third parties (the "associates") to take control of and/or own TPW Wyoming, and/or to take TPW Wyoming customers and to unlawfully compete with TPW Wyoming.  All of which would cause TPW Wyoming to fail as a business or would cause the structure and ownership to change to be to the benefit of Defendant Omanoff and his associates.

25. Defendant Omanoff, together with and leading other employees, including Defendant Pazos, acted in an insubordinate manner and engaged in active and ongoing resistance to managerial and other operational changes within TPW Wyoming.

26. Within this course of conduct, Defendant Omanoff, his associates, and together with Defendant Pazos, further attempted to divert the focus and mission of TPW Wyoming employees, divert TPW Wyoming resources and equipment, and otherwise encourage insubordination of TPW Wyoming employees.

27. Notwithstanding his efforts, Defendant Omanoff's tactics against TPW Wyoming proved unsuccessful, and Defendant Omanoff resigned from his employment with TPW Wyoming on or around July 10, 2019.

28.   Prior to resigning, Defendant Omanoff directed TPW Wyoming employees, including but not limited to Defendant Pazos, to remove proprietary information relating to TPW Wyoming generally and Defendant Omanoff specifically from TPW Wyoming.

29.   On July 24, 2019, counsel for Plaintiff demanded in writing that Defendant Pazos abide by his confidentiality and nondisclosure obligations pursuant to his *Employee Invention Assignment and Confidentiality Agreement.*

30.   Defendant Pazos was ultimately terminated from his employment with TPW Wyoming on July 31, 2019, after requesting the TPW Wyoming human resources manager to change certain of his and Defendant Omanoff personnel records, and to allow Defendant Pazos to take personal control of and remove the TPW Wyoming records relating to his employment.

31.   Defendants Global Tungsten, Omanoff, and Pazos have been represented by, and upon information and belief continue to be represented by, attorney Michael Volkov, of The Volkov Law Group ("Volkov"), of Washington D.C.

32.   On September 5, 2019, Volkov sent a demand letter on behalf of his clients, Defendants Omanoff and Pazos, to TPW Wyoming and THP California making allegations of wrongful termination; TPW Wyoming and THP California denied those allegations to Volkov.

33.   Volkov also represents Defendant Global Tungsten in litigation against THP California in the United States District Court Southern District of California, Case No. 3:18-CV-2352-W-WVG ("California Global Tungsten Suit").

34.   Upon information and belief, Volkov has further acted for Global Tungsten as its agent, in the development of strategy and the execution of efforts and activities to create irreparable financial and business harm to THP Wyoming, as well as THP California.

35.   Since as early as June 2019, Defendant Global Tungsten, independently and by and through its agents and associates, Defendant Omanoff and Defendant Pazos, have been conspiring to disparage and disparaging TPW Wyoming through concentrated independent efforts, collective efforts, and, upon information and belief, at the direction of or in assistance of their attorney, Volkov.

36.   During the period of June and July 2019, Defendants Omanoff and Pazos made statements to the effect that TPW Wyoming should be sold, maintaining orally and/or in writing, that monies were available for purchase of shares, and that certain or all of the then current owners should be removed.

37.   Upon information and belief, during 2019 Defendant Global Tungsten, independently or thorough its agents and associates, conspired with Defendants Omanoff and Pazos in regard to such statements and in the removal of certain proprietary information and property from TPW Wyoming, as well as conspiring in 2019 through 2021 in regard to the overt actions of Defendants Omanoff and Pazos for the purpose of damaging the business of TPW Wyoming.

38.   On or about September 26, 2019, Defendant Global Tungsten, in resolving then outstanding litigation with THP California, entered into an agreement with THP California wherein it specifically agreed not to make false, defamatory, or misleading

statements about the products, services, or business practices of THP California ("Global Tungsten Agreement").[1]

39.   On April 30, 2020, Defendant Omanoff, among other named plaintiffs,[2] sued TPW Wyoming and THP California in the United States District Court of Wyoming, Case No. 19-CV-256-J ("Wyoming Omanoff Suit"), alleging wrongful termination and other causes of action.

40.   On or about July 22, 2020, Defendant Omanoff (and the other named plaintiffs from the Wyoming Omanoff Suit) entered into an agreement with TPW Wyoming and THP California, wherein Defendant Omanoff specifically agreed not to disparage the reputation or business of TPW Wyoming ("Omanoff Agreement")[3].

41.   In or around February and March 2021, within the California Global Tungsten Suit, Volkov has provided billing statements and fee entries which disclose certain dates and activities to THP California that, upon information and belief, establish an intent to conspire with Defendants Omanoff and Pazos and engage in unlawful business activities by illegally targeting and interfering with the business relationships of TPW

---

[1] Due to confidentiality provisions contained among and within the Global Tungsten Agreement, said Agreement has been submitted separately and contemporaneously by motion under seal to this Court.

[2] Interestingly, Defendant Pazos was not a named plaintiff within the Wyoming Omanoff Suit, despite being repeatedly referenced and referred to by the plaintiffs within their filed Complaint.

[3] Due to confidentiality provisions contained among and within the Omanoff Agreement, said Agreement has also been submitted separately and contemporaneously by motion under seal to this Court.  Additionally, the Omanoff Agreement resulted in all plaintiffs dismissing the Wyoming Omanoff Suit.

Wyoming. THP California has challenged such billing statements in the Global Tungsten California Suit, as the statements clearly show a much broader scope of activities by Volkov against THP California and then TPW Wyoming involving witnesses and documents, other than in the litigation being resolved with THP California (the "Volkov Fee Memorandum").

42. On March 3, 2021, Defendant Pazos made a demand to TPW Wyoming for monetary damages, alleging, in part, certain information as the base for his monetary claim that is solely confidential among and within the California Global Tungsten Suit and the Wyoming Omanoff Suit.

43. On or about May 6, 2021, a customer of TPW Wyoming received information mailed "anonymously" from Melbourne, Florida with a postmark dated April 28, 2021 (the "Communication"). The Communication was intended to be damaging to TPW Wyoming. Defendant Omanoff was last known to reside and be located in and around Melbourne, FL.

44. Contained within the Communication were excerpts from a confidential memorandum provided, upon information and belief, solely as an exchange between counsel, including Volkov, in the Global Tungsten California Suit involving THP California.

45. The only persons who would have been privy to the information contained within the Communication and its use would have been Defendant Global Tungsten and its attorney, Volkov.

46.    On or around the months of April and May 2021, TPW Wyoming was informed of other "anonymous" materials adverse to TPW Wyoming that were being sent to TPW Wyoming customers, establishing a pattern of activity by the Defendants.

47.    TPW Wyoming directly competes with Defendant Global Tungsten in the Market. Since September 2019, TPW Wyoming has grown dramatically. It has increased employment from 30 individuals and professionals to over 140 individuals and professionals, and is now the largest commercially independent employer in the State of Wyoming. Additional equipment is being installed and activated that can up to double current production. Significant sums have been expended by TPW Wyoming for the expansion and in its current commercial operations relating to the Market.

48.    TPW Wyoming's commercial success and growth is causing Defendant Global Tungsten to either lose contracts in the Market and/or to lower its prices to gain contracts in the Market. This has, on information and belief, resulted in Defendant Global Tungsten's conspiratorial activities in regard to its defamatory actions and anticompetitive steps against TPW Wyoming.

49.    For antitrust purposes the relevant geographic Market area and product Market are: the United States, and the United States military market for tungsten fragments, that are manufactured products to precise specifications, and that are to be used in missile warheads and similar devices deployed by branches of the United States military to enhance the destructive capabilities of the devices. The contracts to TPW Wyoming and Global Tungsten principally come from major United States defense prime contractors.

50.     Defendant Global Tungsten, independently and by and through its agent and associate Volkov, including the combined Volkov representation of a Defendant Global Tungsten as a competitor and the use of current / former employees of Plaintiff such as Omanoff and Pazos, has engaged in a systematic plan and attendant actions to reassert again and again alleged prior conduct and actions of THP California, all of which occurred prior to September 2019, that that were principally resolved in the Global Tungsten Suit, the California Global Tungsten Suit, as well as the Wyoming Omanoff Suit. These reassertions all now being made in the context of current TPW Wyoming operations, to disparage and intentionally interfere with TPW's business generally, and also specifically with the Market related products and business activities. Upon information and belief, Defendant Global Tungsten has not only engaged as a participant in a conspiracy with Defendants Omanoff and Pazos but has planned and orchestrated its illegal activities with its agent and associate Volkov.

51.     Upon information and belief, Defendant Global Tungsten's ultimate business objective is to drive TPW Wyoming out of the Market, and thereby extend and leverage its current power in the Market.

52.     Defendant Global Tungsten, either itself or though agents and associates, has repeatedly used litigation and threats of litigation as tools to accomplish its business objective. First with THP California, and now with TPW Wyoming. This has been done initially with Defendant Omanoff and now with Defendant Pazos in ongoing claims.

53.     TPW Wyoming has suffered irreparable harm and damages as a result of the individual and collective actions of Defendant Global Tungsten, independently and through its agents and associates, and Defendant Omanoff and Defendant Pazos to disparage and intentionally interfere with customer contracts and clients of TPW Wyoming.

54.     As a result of Defendant Global Tungsten's improper acts, competition in the relevant market will be substantially reduced. If Defendant Global Tungsten is successful, competition from TPW Wyoming in the Market will be eliminated. If successful in its scheme, Defendant Global Tungsten will be a principal source, if not the principal source, of relevant product in the Market. As a result, Market related product price levels would become uncompetitive.


**FIRST CLAIM FOR RELIEF –**
**BREACH OF CONTRACT**
**(Against Defendant Omanoff)**

55.     Plaintiff restates each and every allegation contained in Paragraphs 1 through 54.

56.     Defendant Omanoff agreed to and signed the Omanoff Agreement.

57.     The Omanoff Agreement was a binding contract between Defendant Omanoff and Plaintiff.

58.     In signing the contract, Defendant Omanoff explicitly agreed that he would not knowingly or intentionally disparage the reputation or business of the Plaintiff.

59.     Defendant Omanoff has breached the contract by his actions in regard to TPW Wyoming customers and in the marketplace.

60.     As a result of Defendant Omanoff's breach of the Omanoff Agreement, Plaintiff has suffered damages in an amount to be proven at trial, which singularly or when aggregated with other damages will greatly exceed $75,000.00.

**SECOND CLAIM FOR RELIEF –**
**BREACH OF CONTRACT**
**(Against Defendants Omanoff and Pazos)**

61.     Plaintiff restates each and every allegation contained in Paragraphs 1 through 60.

62.     Defendants Omanoff and Pazos agreed to and signed the Confidentiality and Non-Disclosure Agreement(s).

63.     The Confidentiality and Non-Disclosure Agreements were binding contracts by and between Defendants Omanoff and Pazos and Plaintiff.

64.     In signing the Confidentiality and Non-Disclosure Agreement(s), Defendant Omanoff and Defendant Pazos each explicitly agreed to preserve and protect Plaintiff's proprietary information and to not misuse or disclose any of Plaintiff's confidential and/or proprietary information.

65.     Defendant Omanoff and Defendant Pazos each breached the Confidentiality and Non-Disclosure Agreement(s) by, and including but not limited to, taking possession of Plaintiff's proprietary information in direct violation of the "Work for Hire" provision which provides that proprietary information is the sole and exclusive property of Plaintiff. As a result of taking certain of the confidential information, Pazos employment was terminated.

66.     As a result of the breach of the Confidentiality and Non-Disclosure Agreement(s) by Defendant Omanoff and Defendant Pazos, Plaintiff has suffered damages in an amount to be proven at trial, which singularly or when aggregated with other damages will greatly exceed $75,000.00.

### THIRD CLAIM FOR RELIEF – THEFT/CONVERSION
### (Against Defendants Omanoff and Pazos)

67.     Plaintiff restates each and every allegation contained in Paragraphs 1 through 66.

68.     Defendant Omanoff and Defendant Pazos each treated Plaintiff's property as his own, by taking customer information, confidential drawings, plans, and other proprietary information from Plaintiff, and thereby denying Plaintiff the benefits and rights of ownership in that property.

69.     Plaintiff has the right to possess the customer information, confidential drawings, plans, and other proprietary information at the time both Defendant Omanoff and Defendant Pazos took them from Plaintiff.

70.     Defendant Omanoff and Defendant Pazos each exercised dominion and control over Plaintiff's property by taking it from Plaintiff's control.

71.     Defendant Omanoff and Defendant Pazos each treated Plaintiff's property as his own by inappropriately requesting, accessing, downloading and taking confidential Plaintiff's files, thereby denying Plaintiff the benefits and rights of sole use and ownership in the property.

72.     As a result, Plaintiff has suffered damages in an amount to be proven at trial, which singularly or when aggregated with other damages will greatly exceed $75,000.00.

## FOURTH CLAIM FOR RELIEF –
## CONSPIRACY TO INTENTIONALLY INTERFERE WITH BUSINESS RELATIONS
### (Against All Defendants)

73. Plaintiff restates each and every allegation contained in Paragraphs 1 through 72.

74. Plaintiff possessed a valid business relationship with its customers in being able to manufacture, produce and sell products to customers at a profit, while retaining confidential proprietary information related to the production of those products.

75. All Defendants had knowledge of this business relationship, as Defendants Omanoff and Pazos had been employed by Plaintiff, were represented by the same attorney as Defendant Global Tungsten (Volkov) and were aware of the need for confidentiality of proprietary information in order for Plaintiff to efficiently and effectively produce and sell its products at a profit. Defendant Global Tungsten had knowledge of this business relationship as it is a principal competitor against Plaintiff in the same Market.

76. Defendant Omanoff and Defendant Pazos conspired with Defendant Global Tungsten and its agent and associate Volkov to interfere with Plaintiff's business relations. The Defendants jointly engaged in a systematic campaign to destroy the reputation of Plaintiff and deprive Plaintiff of its customers and business relations.

77. Defendant Omanoff committed an overt act in furtherance of the Defendants' plan and campaign to interfere with Plaintiff's business relations by inducing and/or attempting to induce Plaintiff's customers to terminate their relationship with Plaintiff.

78. Defendants attempted to improperly interfere with Plaintiff's business relations by disseminating disparaging and/or false information about Plaintiff and its products to

customers and business relations of Plaintiff as well as in the general defense industry marketplace.

79.   Defendants caused damage to Plaintiff as a result of their attempt to disrupt and damage Plaintiff's business relationships.

80.   As a result of Defendants' actions in furtherance of their interfere with Plaintiff's business relations, Plaintiff has suffered damages in an amount to be proven at trial, which singularly or when aggregated with other damages will greatly exceed $75,000.00.

## FIFTH CLAIM FOR RELIEF -
## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS
### (Against All Defendants)

81.   Plaintiff restates each and every allegation contained in Paragraphs 1 through 80.

82.   Plaintiff possessed valid business relationships with its customers and clients in being able to manufacture, produce and sell products at a profit, while retaining confidential proprietary information related to the production of those products.

83.   Defendants had knowledge of these business relationships, as Defendants Omanoff and Pazos had been employed by Plaintiff and were aware of the need for confidentiality of proprietary information in order for Plaintiff to efficiently and effectively produce and sell its products at a profit. Defendant Global Tungsten had knowledge of this business relationship as it has competed against Plaintiff in the same or similar business.

84.    Defendants disseminated disparaging and/or false statements and information to Plaintiff's customers and potential customers so as to take customers away from TPW Wyoming, undermine its competitive position, and impair its reputation.

85.    Defendants knew these disparaging and/or false statements were made to Plaintiff's current or prospective customers, as well as to tungsten products marketplace in general and the defense industry in particular.

86.    By communicating this disparaging and/or false information to Plaintiff's current or prospective customers, in the tungsten marketplace generally and to the defense industry specifically, Defendants intended to harm Plaintiff by causing Plaintiff's current customers to terminate their relationship with Plaintiff, and/or by causing Plaintiff's prospective customers not to enter into contractual agreements with Plaintiff.

87.    Defendants intentionally and improperly communicated this disparaging and/or false information which resulted in certain of Plaintiff's customers terminating, adjusting or delaying their commercial relationship with Plaintiff.

88.    Defendants' disparaging and/or false statements were neither justified nor privileged.

89.    Defendants' disparaging and/or false statements about Plaintiff has disrupted and damaged Plaintiff's relationship with both current and prospective customers and continues to do so.

90.    Defendants' disparaging and/or false statements about Plaintiff has caused and continue to cause Plaintiff irreparable harm to Plaintiff's reputation, brand image, and goodwill in the marketplace.

91.  As a result of Defendants' intentional interference with Plaintiff's business relations, Plaintiff has suffered damages in an amount to be proven at trial, which singularly or when aggregated with other damages will greatly exceed $75,000.00.

### SIXTH CLAIM FOR RELIEF - COMMERCIAL DISPARAGEMENT
### (Against All Defendants)

92.  Plaintiff restates each and every allegation contained in Paragraphs 1 through 91.

93.  Plaintiff possessed valid business relationships with its customers and clients in being able to manufacture, produce and sell products at a profit, while retaining confidential proprietary information related to the production of those products.

94.  Defendants had knowledge of these business relationships, as Defendants Omanoff and Pazos had been employed by Plaintiff and were aware of the need for confidentiality of proprietary information in order for Plaintiff to efficiently and effectively produce and sell its products at a profit.  Defendant Global Tungsten had knowledge of this business relationship as it has competed against Plaintiff in the same or similar business.

95.  Defendants disseminated disparaging and/or false statements and information about TPW Wyoming's goods to Plaintiff's customers and potential customers so as to take customers away from TPW Wyoming, undermine its competitive position, and impair its reputation.

96.  Defendants knew these disparaging and/or false statements were made to Plaintiff's current or prospective customers, as well as to tungsten products marketplace in general and the defense industry in particular.

97.  By communicating this disparaging and/or false information concerning TPW Wyoming's goods to Plaintiff's current or prospective customers, in the tungsten marketplace generally and to the defense industry specifically, Defendants intended to harm Plaintiff by causing Plaintiff's current customers to terminate their relationship with Plaintiff, and/or by causing Plaintiff's prospective customers not to enter into contractual agreements with Plaintiff.

98.  Defendants intentionally and improperly communicated this disparaging and/or false information about TPW Wyoming's goods which resulted in certain of Plaintiff's customers terminating, adjusting or delaying their commercial relationship with Plaintiff.

99.  Defendants' disparaging and/or false statements were neither justified nor privileged.

100. Defendants' disparaging and/or false statements about Plaintiff has disrupted and damaged Plaintiff's relationship with both current and prospective customers and continues to do so.

101. Defendants' disparaging and/or false statements about Plaintiff were made in malice and not in good faith for any justifiable purpose.

102. Defendants' disparaging and/or false statements about Plaintiff has caused and continue to cause Plaintiff irreparable harm to its financial interests in the form of special damages.

103. As a result of Defendants' disparaging and/or false statements, Plaintiff has suffered special damages in an amount to be proven at trial, which singularly or when aggregated with other damages will greatly exceed $75,000.00.

## SEVENTH CLAIM FOR RELIEF -
## SHERMAN ACT SECTION 2, ATTEMPT TO MONOPOLIZE
### (Against Defendant Global Tungsten)

104.  Plaintiff restates each and every allegation contained in Paragraphs 1 through 103.

105.  Defendant Global Tungsten, with the specific intent to control prices or destroy competition, has engaged in predatory, exclusionary, and anticompetitive conduct directed to that purpose. There is a dangerous probability that Defendant Global Tungsten will achieve monopoly power and its ultimate goal of monopolizing the relevant Market. It has thereby violated Section 2 of the Sherman Act.

## JURY DEMAND

106.  Plaintiff demands a trial by jury of twelve on all issues triable to a jury as a matter of right.

## NOTICE OF NON-COMPLEX CASE

107.  Plaintiff believes this matter is non-complex.

## CONCLUSION AND PRAYER FOR RELIEF

108.  Plaintiff respectfully requests that, upon a final trial or hearing, the Court:

    (a)    Award actual, special and treble damages, in an amount to be determined by the trier of fact, incurred by Plaintiff as a result of Defendant General Tungsten's antitrust violations;

    (b)    Enjoin Defendant General Tungsten's anticompetitive practices;

    (c)    Award actual and punitive damages, in an amount to be determined by

the trier of fact, incurred by Plaintiff as a result of Defendants' tortious conduct;

(d) Award actual and punitive damages, in an amount to be determined by the trier of fact, incurred by Plaintiff as a result of Defendants' breaches of contract;

(e) Award Plaintiff its reasonable and necessary attorneys' fees, prejudgment and post-judgment interest at the highest rate allowed by the applicable law, and costs of court; and

(f) Award all other relief both at law and equity to which Plaintiff is entitled.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

VERIFICATION

_____
John Patrick Batache
CEO and President of TPW Wyoming

05/20/2021
_____
Date


STATE OF WYOMING        )
                        ) ss.
COUNTY OF ALBANY        )

This *Verified Complaint* was subscribed and sworn (or affirmed) and verified before me on the
20 day of May 2021 by John Patrick Batache, CEO and President of TPW Wyoming.

Witness my hand and official seal.

_____
Notary Public

My Commission Expires: 8/4/2024

AMBER VANDIVER - NOTARY PUBLIC
COUNTY OF          STATE OF
ALBANY             WYOMING
MY COMMISSION EXPIRES 8/4/2024


RESPECTFULLY SUBMITTED this 20 day of May 2021.

/s/ Megan Overmann Goetz
/s/ Crystal D. Stewart
Megan Overmann Goetz, Bar #6-3634
Crystal D. Stewart, Bar #7-6057
PENCE AND MACMILLAN LLC
501 E. Garfield
P.O. Box 1285
Laramie, WY 82073
(307) 745-3626 (telephone)
(307) 745-8669 (fax)
movermann@penceandmac.com
cstewart@penceandmac.com
Attorneys for Plaintiffs